1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

10  SHERRY MONEY, an individual and as          )     3:11-cv-00800-LRH-WGC
    administrator for the ESTATE OF             )
11  KENNETH MONEY; and KENNY                    )     **ORDER**
    MONEY, an individual,                       )
12                                              )
                    Plaintiffs,                 )
13                                              )
            vs.                                 )
14                                              )
    BANNER HEALTH, dba BANNER                   )
15  CHURCHILL COMMUNITY HOSPITAL,               )
    a foreign non-profit corporation;          )
16  DONALD GANDY, D.O., an individual;          )
    WARREN P. THAI, M.D., an individual;        )
17  DOE Defendants 1 through X, inclusive,      )
    ROE CORPORATIONS A through Z,               )
18  inclusive,                                  )
                                                )
19                  Defendants.                 )
    _____)
20

21          Before the court is the Motion to Stay Discovery (Doc. #18)[1] of Defendants Banner Health,

22  dba Banner Churchill Community Hospital ("Banner Hospital") and Warren P. Thai ("Dr. Thai").

23  Defendants seek to postpone discovery pending the disposition of the Defendants' motions to dismiss.

24  (Doc. ## 6, 9, 10).  Defendant Donald Gandy, D.O. ("Dr. Gandy") joined in the motion to stay.

25  (Doc. # 19.)  Plaintiffs Sherry Money, the Estate of Kenneth Money, and Kenny Money ("Plaintiffs")

26  have filed an opposition to the motion to stay (Doc. # 20) and Banner Hospital and Dr. Thai have

27  replied (Doc. # 21).

28
    _____
            [1] Refers to court's docket number.

# I. BACKGROUND

According to the allegations contained in Plaintiffs' complaint, at approximately 2:30 p.m. on November 4, 2010, Kenneth Money ("Mr. Money") presented at the emergency room at Banner Hospital in Fallon, Nevada, complaining of chest pain radiating to his jaw. (Compl. #1 at 3:6-10.)

Mr. Money was initially assessed by a Banner Hospital nurse and subsequently seen and treated by Dr. Gandy. (*Id*. at 3-4.) Following a review of Mr. Money's medical history and a physical examination, Dr. Gandy ordered a series of medications for him, including Clonidine and morphine. (*Id*.) Mr. Money was subsequently also examined by Dr. Thai, who diagnosed hypertension, back pain, and morbid obesity. (*Id*. at 4:19.)

An EKG was then performed. (Pls.' Expert Affidavit (#1-1) at 3:9.) Although Mr. Money's EKG reading "was essentially normal," his condition apparently started deteriorating. (*Id*.) Drs. Thai and Gandy then ordered additional EKGs, several blood tests, a chest x-ray, a CT scan, and "repeated cardiac lab" reports. (*Id*. at 4-7.) A 11:45 p.m., after ruling out a diagnosis of aortic dissection, Drs. Thai and Gandy diagnosed Mr. Money with acute myocardial infarction. (*Id*. at 3:13.) He was treated for a heart attack and for cardiac ischemia (*Id*. at 6:17.) Soon thereafter, Mr. Money was transferred to Banner Hospital's intensive care unit (ICU). (*Id*. at 7:1.)

At 12:33 a.m., an unidentified doctor signed a request to air transfer Mr. Money to St. Mary's Hospital in Reno. (Doc. #1 at 4:21-22.) Plaintiffs' complaint does not specify whether the unidentified doctor's request to transfer Mr. Money was denied or granted. (*Id*.) From the information in Plaintiffs' pleadings, the court's interpretation of the events is that Mr. Money was *not* transferred. At 12:39 a.m., Mr. Money went into cardiac arrest. (*Id*. at 4:23-24.) Despite the attempts of Dr. Thai and other Banner Hospital personnel to revive him, Mr. Money was pronounced dead at 1:12 a.m. (*Id*. at 5:42.)[2]

On November 3, 2011, Mrs. Money, the Estate of Mr. Money, and Kenny Money filed suit in United States District Court for the District of Nevada against Banner Hospital, Dr. Thai, and

---

[2] The Plaintiffs' complaint ,"General Allegations," and the NRS Chapter 41A affidavit of Plaintiffs' expert, Dr. Mark Boren (Doc. ## 1 and 1-1) describe in greater detail the treatment Mr. Money received.

Dr. Gandy.  (Doc. #1.)  Federal question jurisdiction is predicated by Plaintiffs under 28 U.S.C. § 1331 solely on the component of the action asserted against Banner Hospital (Doc. #1 at 2:22.)  More specifically, Plaintiffs allege that the circumstances surrounding Mr. Money's death give rise to a federal cause of action under the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, ("EMTALA").

EMTALA, commonly known as the "Patient Anti-Dumping Act," was enacted in response to congressional concern about the quality of medical services provided primarily to the indigent and the uninsured who seek care from hospital emergency rooms.  *Jackson v. East Bay Hospital*, 246 F.3d 1248, 1254 (9th Cir. 2001).  Congress suspected that hospitals were "dumping" patients who were unable to pay for care, either by refusing to provide basic emergency treatment (*i.e.*, "failure to screen") or by transferring patients to other hospitals before the patients' conditions sufficiently stabilized to allow transfer ("failure to stabilize").  *See* H.R. Rep. No 241, 99th Cong., 1st Sess., Part I, at 27 (1985) (cited in *Jackson*, 246 F.3d at 1254)).

In an attempt to remedy this problem and provide legal recourse to such patients, EMTALA created a new federal cause of action against hospitals for failing to appropriately screen hospital patients.  *Bryant v. Adventist Health System West*, 289 F.3d 1162, 1168 (9th Cir. 2002) (citation omitted).  EMTALA also prohibits hospitals from "dumping" the patient on other hospitals by transferring the patient before the patients' conditions stabilize. *Jackson*, 246 F.3d at 1254-55.[3] However, EMTALA is *not* a medical malpractice statute and provides no cause of action for what would traditionally be considered medical malpractice. Causes of action under EMTALA are limited to suits against hospitals.  *Id.*

According to Plaintiffs, Banner Hospital violated both elements of EMTALA, first, by failing to screen Mr. Money and, second, by failing to stabilize him.  (Doc. # 1 at 5-10.)  In addition, Plaintiffs asserted state law claims (traditional medical malpractice and wrongful death) against Banner Hospital, Dr. Thai, and Dr. Gandy pursuant to the federal court's pendent jurisdiction under 28 U.S.C. §1367(a). Plaintiffs' complaint was accompanied by the medical expert affidavit as required by Chapter 41A,

---

[3] The two causes of action against a hospital are typically styled or captioned as a "failure to screen" and/or a "failure to stabilize," as they are herein.

1    Nev. Rev. Stat. (Doc. #1-1).[4]

2         On January 14, 2012, and January 17, 2012, Banner Hospital and Dr. Thai filed two Rule

3    12(b)(6) motions to dismiss.  (Doc. ## 9, 10.)  Of importance here is the second motion (Doc. # 10),

4    which questions federal jurisdiction.  The substance of Banner Hospital's and Dr. Thai's motion is that

5    Plaintiffs' claims against Banner Hospital should be dismissed because of Plaintiffs' failure to

6    articulate a viable EMTALA claim, without which this court would not have a jurisdictional basis to

7    hear this case.  (Doc. # 10 at 7:7-9.)[5]

8         In that regard, Banner Hospital and Dr. Thai argue that no "patient dumping" occurred because

9    Mr. Money was both screened (*i.e.*, the "failure to screen" cause of action) and stabilized (*i.e.*, the

10   "failure to stabilize" claim for relief) by hospital personnel consistent with EMTALA requirements.

11   Defendants also argue that EMTALA would not give rise to either a screening or stabilization cause

12   of action because Mr. Money was *admitted* to Banner Hospital, (Doc. # 10 at 7-8.)  Defendants further

13   argue that Plaintiffs' complaint fails with respect to Plaintiffs' EMTALA claims, because they merely

14   reflect  a "formulaic recitation of the elements of a cause of action," which *Ashcroft v. Iqbal*, 556 U.S.

15   662 (2009), prohibits.  (Doc. # 9 at 5:24-25.)

16        On February 28, 2012, Banner Hospital and Dr. Thai filed a Motion to Stay Discovery

17   (Doc. # 18)  pending disposition of Defendants' Motions to Dismiss.  (Doc. ## 9, 10.)  Dr. Gandy

18   joined in Banner Hospital's and Dr. Thai's Motion to Stay.  (Doc. # 19.)   As will be discussed in

19   greater detail herein, whether a stay of discovery should or should not be granted herein is dependent

20   on whether this court determines it is probable the underlying Motion to Dismiss (Doc. # 10) will be

21   granted.

22

23        [4] Plaintiffs do not assert diversity as a basis for federal jurisdiction. (*See* Doc. # 1 at 2:22.). Jurisdiction
     for the  common law "malpractice claims"  plaintiffs allege would fall under the court's pendent jurisdiction.
24   Thus, whether federal jurisdiction is present in the instant matter to allow the action to proceed in this court will
     depend on the viability of Plaintiffs' EMTALA averments which are lodged solely against Banner Hospital.
25

26        [5] On November 29, 2011, Dr. Gandy filed a motion to dismiss on the grounds that the court lacks subject
     matter jurisdiction against him because Plaintiffs did not plead a federal cause of action against him. (*Id*. at 5-6.)
27   He also argues that the court should not exercise supplemental jurisdiction in his case because combining
     Plaintiffs' claims against him with those lodged against Banner Hospital would likely confuse the jury as
28   different standards of care apply. (*Id*. at 8.) For the reasons stated herein, the merits of Dr. Gandy's Motion (Doc.
     #6) are not addressed by this order.

4

1    Banner Hospital, Dr. Thai, and Dr. Gandy submit that discovery should be stayed herein for

2    four reasons. First, Defendants argue that staying discovery is justified because the underlying motions

3    to dismiss are potentially dispositive of the entire case.  (Doc. # 18 at 2-3.)

4    Second, Defendants assert staying discovery is appropriate because the pending Motion to

5    Dismiss (Doc. # 10) can be decided without further discovery.  (*Id*. at 3:7.)  In that regard, Plaintiffs

6    make only a passing reference for the need of additional discovery in their Opposition to the Motion

7    for Stay (Doc. #20).  At page 4, Plaintiffs state that "[w]ithout discovery to determine the policies and

8    procedures of the Defendants, such a dispositive motion cannot be granted." (*Id.* at 4).  Plaintiffs'

9    Opposition to the Defendants' EMTALA Motion to Dismiss (Doc. #15) only mentions in the

10   conclusion that "this case must be permitted to proceed to discovery" (*id*. at 12), without stating what

11   discovery Plaintiffs need to rebut Defendants' assertions that Plaintiffs have not stated a viable

12   EMTALA claim.

13   However, the complaint alleged that "the examination provided to Kenneth was not comparable

14   to the one offered to other patients presenting similar symptoms, namely for MI." (Doc. # 1 at 5, ¶47).

15   This was not an allegation made on "information and belief."  From this averment, the reader would

16   assume that the pleader already knew what Banner Hospital's screening and stabilization policies and

17   procedures were.  Similarly, Plaintiffs' Opposition to the Motion to Dismiss (Doc. #15) states that "[i]t

18   is Plaintiffs' assertion that Defendants did not follow their "usual" screening procedures."  (*Id*. at 4).

19   It is seemingly contradictory, on the one hand, for Plaintiffs to allege Defendants' non-compliance with

20   Banner Hospital's "usual" procedures "offered to other patients presenting similar symptoms"

21   (Compl., Doc. #1 at ¶48) or that Defendants did not follow "their 'usual' screening procedures" while,

22   on the other hand, to argue in their Opposition to the Motion to Stay that Plaintiffs need "discovery

23   to determine the policies and procedures of Defendants."  (Doc. # 20 at 4).   The court also notes that

24   Plaintiffs did not request the court to defer consideration of the Motions to Dismiss to enable Plaintiffs

25   to undertake certain discovery.

26   Third, Defendants contend that a stay is warranted because forestalling the case pending

27   resolution of the Motion to Dismiss will not prejudice Plaintiffs.  (*Id*. at 3:16.)

28   Fourth, and last, Defendants argue permitting discovery to proceed while the court considers

the Motion to Dismiss would subject Defendants to significant expenses, including the retention of medical experts. (*Id*. at 3:21)

Conversely, Plaintiffs argue that staying discovery is inappropriate. Plaintiffs contend that they have pled the *prima facie* requirements for EMTALA liability against Banner Hospital and that the mere filing of a motion to dismiss should not stay discovery. (Doc. # 20 at 4.) As noted above, Plaintiffs also make an oblique reference to the need to conduct discovery. Plaintiffs' further argue Defendants' alleged financial hardship is insufficient to warrant a stay. (Doc. # 20 at 5.)

## II.  LEGAL STANDARD

In evaluating the propriety of an order staying discovery while a dispositive motion is pending, the court initially considers the goal of Federal Rule of Civil Procedure 1. The guiding premise of the Rules in general, and Rule 1 in particular, is that the Rules shall "be construed and administered to secure the just, speedy, and inexpensive determination of every action." It needs no citation of authority to recognize that discovery is expensive. The Supreme Court has mandated that trial courts should resolve civil matters fairly but without undue cost. *Brown Shoe Co. v. United States*, 370 U.S. 294, 306 (1962). One of Defendants' grounds for requesting a stay herein is that expert witnesses will need to be retained at considerable expense. If the underlying motions to dismiss are eventually granted, Defendants will bear this expense if discovery is not stayed.

Even if the parties may incur the expense of discovery while awaiting resolution of a dispositive motion, the Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending. *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600-01 (C.D. Cal. 1995). However, pursuant to Federal Rule of Civil Procedure 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Whether to grant a stay is within the discretion of the court. *Munoz-Santana v. U.S. I.N.S.*, 742 F.2d 561, 562 (9th Cir. 1984). The party seeking the protective order, however, has the burden "to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." Fed. R. Civ. P. 26(c)(1).

Satisfying the "good cause" obligation is a challenging task. A party seeking "a stay of discovery carries the heavy burden of making a 'strong showing' why discovery should be denied."

1    *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) (citing *Blankenship v. Hearst Corp.*

2    519 F.2d 418, 429 (9th Cir. 1975)).  The Ninth Circuit has held that under certain circumstances, a

3    district court abuses its discretion if it prevents a party from conducting discovery relevant to a

4    potentially dispositive motion.  *See Alaska Cargo Transport, Inc. v. Alaska R.R. Corp.*, 5 F.3d 378,

5    383 (9th Cir. 1993) (stating the district court would have abused its discretion in staying discovery if

6    the discovery was relevant to whether or not the court had subject matter jurisdiction).

7            Two published decisions in this district have held that a stay of discovery is not warranted

8    simply because a dispositive motion is pending.  *Twin City Fire Ins. v. Employers of Wausau*, 124

9    F.R.D. 652, 653 (D. Nev. 1989); *Turner Broadcasting Systems, Inc. v. Tracinda Corp.*, 175 F.R.D.

10   554, 556 (D. Nev. 1997).  Both opinions concluded that to establish good cause for a stay, the moving

11   party must show more than that an apparently meritorious Rule 12(b)(6) motion to dismiss is pending

12   in the litigation.  *Id.*  Instead, citing *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) cert. denied,

13   455 U.S. 942 (1982), *Twin City* and *Turner* both ruled a district court "may. . . stay discovery when

14   it is *convinced* that the Plaintiff will be unable to state a claim for relief."  *Id.* (emphasis in the

15   original).  *Twin City*, 124 F.R.D. at 653; *Turner*, 175 F.R.D. at 555.

16           Typical situations in which staying discovery pending a ruling on a dispositive motion are

17   appropriate would be where the dispositive motion raises issues of jurisdiction, venue, or immunity.

18   *Id.*  As discussed below, the substance of Defendants' motion herein is an attack on federal

19   jurisdiction, *i.e.*, whether Plaintiffs' EMTALA claims against Banner Hospital will survive a motion

20   to dismiss.  If the court is convinced the underlying motion, if granted, would be dispositive of the

21   federal claims herein,  then the court should enter a stay of discovery pending formal resolution of the

22   underlying motion.  *Id.*

23           The Northern and Eastern District courts of California have applied an analogous but somewhat

24   different two-part test for evaluating whether and under what conditions discovery should be stayed.

25   In *Mlejnecky v. Olympus Imaging America, Inc.*, No. 10-2630 2011 WL 489743 at *6 (E.D. Cal.

26   Feb. 7, 2011), the court held that an underlying motion to dismiss must be potentially dispositive of

27   the entire case, or at least dispositive on the issue on which discovery stay is sought.  *Id.*  Second, the

28   court must determine whether the pending motion can be decided without additional discovery.  *Id.*

In applying this two-part test, the court evaluating the motion to stay must take a so-called "preliminary peek" at the merits of the underlying pending dispositive motion to assess whether a stay of discovery is warranted.  If the party moving to stay satisfies both prongs of the *Mlejnecky* test, discovery may be stayed.

Similarly, a decision from the Central District of California has held that discovery should be stayed while a dispositive motion is pending "only when there are no factual issues in need of further immediate exploration, and the issues before the Court are purely questions of law that are potentially dispositive."  *Skellerup Indus. Ltd.* 163 F.R.D. at 601 (citing *Hachette Distribution, Inc. v. Hudson County News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991)).

The issue of whether a motion to stay should be granted pending the resolution of a motion to dismiss was recently decided by the Hon. Peggy A. Leen, Magistrate Judge, in the case of *TradeBay, LLC v. Ebay, Inc*., No. 11-702 2011 WL 6182039 (D. Nev. Dec. 13, 2011).  Judge Leen was confronted with a similar request by the defendant's motion to stay discovery pending the resolution of a motion to dismiss.  *Id.*  Therein, Judge Leen adopted the standard enunciated in *Twin City*, *Turner*, and *Olympus Imaging*.  Judge Leen concluded that a stay of discovery should be ordered only if, after taking a "preliminary peek" at the merits of the pending dispositive motion, the court is "convinced" that the Plaintiff will be unable to state a claim for relief.

### III.  DISCUSSION

This court embraces the well-reasoned approach and analysis of this discovery issue undertaken by Judge Leen in *TradeBay* and will apply these standards herein with respect to Defendants' motion.[6] Following Judge Leen's decision in *TradeBay*, the court herein has undertaken and completed its "preliminary peek" of Banner Hospital's and Dr. Thai's motion to dismiss (Doc. # 10).  In that regard, the court notes two major shortcomings in Plaintiffs' action against Banner Hospital.  First, although

---

[6] Echoing Judge Leen, this court notes that taking a "preliminary peek" at the pending dispositive motion recommended by *Olympus Imaging* places a magistrate judge in an awkward position.  The court's "preliminary peek" requires the court to be "convinced" the underlying motion to dismiss is meritorious.  However, the district judge who will eventually consider the motion to dismiss (which is a dispositive motion) may have a very different view of the merits of the underlying motion.  *See TradeBay*, 2011 WL 6182039 at *5.  Thus, this court's "preliminary peek" is not intended to prejudice the outcome but merely to evaluate the propriety of an order staying or limiting discovery by undertaking a general analysis of the merits of the underlying motion.  *Id.*

1   a complaint need not contain "detailed factual allegations," Rule 8 requires "more than an unadorned,

2   the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citing *Bell*

3   *Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).  As enunciated in *Iqbal*, "a complaint must

4   contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

5   face.'" *Id.*  Plausibility requires more than "a sheer possibility that defendant has acted unlawfully."

6   *id.*  "Where a complaint pleads fact that are 'merely consistent with' a defendant's liability, it 'stops

7   short of the line between possibility and plausibility of entitlement to relief.'" *Id.*  As recently noted

8   by the Hon. Edward C. Reed, Jr., Senior District Judge, Rule 8 "does not unlock the doors of discovery

9   for a plaintiff armed with nothing more than conclusions." *Marin v. Wells Fargo Bank, N.A.*,

10  No. 11-309 2012 WL 424564 at *2 (D. Nev. Feb. 9, 2012) (quoting *Iqbal*, 556 U.S. at 662)).

11          The court finds Plaintiffs' complaint herein is conclusory with respect to Plaintiffs' EMTALA

12  averments.  The complaint parrots the required elements for an EMTALA cause of action without

13  averring specific facts how Defendants, Banner Hospital in particular, either failed to screen the patient

14  or failed to stabilize him before transfer.[7]  Plaintiffs' Complaint and Opposition to Defendants'

15  Motions to Dismiss (Doc. # 1, ¶48; Doc. # 15 at 4) both allege Banner's noncompliance with its own

16  procedures but does not specify what the "usual procedures" are and how these "usual procedures"

17  differed with the treatment provided Mr. Money.

18          Second, Defendants' Motion to Dismiss (Doc. # 10) questions whether the Plaintiffs have

19  stated a viable EMTALA claim, which is the predicate for federal court jurisdiction.  Banner Hospital

20  and Dr. Thai argue that Plaintiffs' EMTALA claims fail as a matter of law because the facts alleged

21  in Plaintiffs' Complaint do not give rise to a viable EMTALA (*i.e.*, failure to screen and/or failure to

22  stabilize) cause of action.  (Doc. # 10 at 7.)  Defendants contend that the basis for federal jurisdiction

23  fails because, even after admitting the alleged facts as true, there is no viable or actionable federal

24  EMTALA claim asserted herein.

25          The Court's review of the underlying motion via the so-called "preliminary peek" will focus

26  on the Plaintiffs' claims asserted with respect to federal jurisdiction, *i.e.*, the two EMTALA causes of

27

28          [7] As discussed *infra*, the patient was not transferred, which will be seen as an important issue.

1  action.  If thereafter the court is "convinced" the Plaintiffs' EMTALA claims will not survive

2  Defendants' Motion to Dismiss (even assuming there were no *Iqbal* deficiencies in Plaintiffs'

3  pleading), then a stay of discovery should be entered herein.[8]

4  ### A.    *The Federal Jurisdiction Component of Plaintiffs' Complaint*

5      As is well-established, federal courts are courts of limited jurisdiction and are "presumed to

6  lack jurisdiction in a particular case unless the contrary affirmatively appears."  *Stockwest, Inc. v.*

7  *Confederate Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted);

8  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "Without jurisdiction [a] court

9  cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist,

10  the only function remaining in every federal case [is] that of announcing the fact and dismissing the

11  cause."  *Ex parte McCardle*, 74 U.S. 506, 514 (1869).

12      Plaintiffs' Complaint premises this court's jurisdiction pursuant to 28 U.S.C. § 1331.  As stated

13  above, the federal jurisdiction Plaintiffs seek to invoke is that Banner Hospital and its agents allegedly

14  violated EMTALA, first, by failing to screen Mr. Money and, second, by failing to stabilize him.

15  (Doc. # 1 at 2:21-22, 5-6.)  Plaintiffs' Complaint does not allege any other grounds that would warrant

16  this court's exercise of jurisdiction over Plaintiffs' case.  (*See generally* Doc. # 1.)

17      Central to the court's analysis is that the only defendant named with regard to Plaintiffs'

18  EMTALA causes of action is Banner Hospital.  (*Id.* at 5-6.)  The EMTALA statute, 42 U.S.C.

19  § 1395dd(d)(2)(A), only authorizes suits against hospitals, not physicians.  Numerous decisions

20  confirm that EMTALA provides no right of action against physicians. *See, e.g.*, *Delaney v. Cade*, 986

21  F.2d 387, 393 (10th Cir. 1993); *Baber v. Hospital Corp. of Am*, 977 F.2d 872, 877 (4th Cir. 1992);

22  *Gatewood v. Washington Healthcare Corp.*, 933 F.2d 1037, 1040 n. 1 (D.C. Cir. 1991); *Helton v.*

23  *Phelps County Regional Med*. Ctr., 817 F. Supp. 789 (E.D. Mo. 1993); *Holcomb v. Monahan*, 807 F.

24  Supp. 1526, 1531 (M.D. Ala. 1992); *Richardson v. Southwest Mississippi Regional Med. Ctr.*, 794 F.

25  Supp. 198 (S.D. Miss. 1992).

26

27      [8] Because Banner Hospital's and Dr. Thai's Motion to Dismiss (Doc. #10) raises a jurisdictional
question, it is not necessary for the court to evaluate the merits of Plaintiffs' state law malpractice claims against
28  Banner Hospital, Dr. Thai and Dr. Gandy.  *See infra* at p. 16.

1    Thus, if there is no basis under the facts as alleged herein for an EMTALA claim against

2    Banner Hospital, it necessarily follows that there is no federal jurisdiction for this court to hear this

3    lawsuit and Plaintiffs' state law causes of action would have to be dismissed. *Jones v. Community*

4    *Redevelopment Agency*, 733 F.2d 646, 651 (9th Cir.1984) (stating that dismissal of federal claims

5    before trial dictates that the pendent state claims should be dismissed as well); *see also Deron v.*

6    *Wilkins*, 879 F. Supp. 603, 606-077 (S.D. Miss. 1995) (remanding plaintiff's medical malpractice

7    claims to state court because there was no basis under the facts for plaintiff's EMTALA claim).

8    Consequently, the court's decision to grant or deny Defendants' motion to stay discovery is

9    dependent on whether Plaintiffs' Complaint contains sufficient factual allegations against Banner

10    Hospital to warrant the court's exercise of federal jurisdiction under EMTALA and 28 U.S.C. § 1331.

11    As discussed above, the court must be "convinced" that Defendants' Motion to Dismiss (Doc. # 10)

12    will be granted in order to be able to enter a stay herein.

13    **B.    Plaintiffs' EMTALA Claims Are Insufficient to Invoke the Court's Subject Matter**

14    **Jurisdiction**

15    After undertaking a review of the underlying motion (which required a more thorough analysis

16    of the merits of Plaintiffs' action and Defendants' Motions to Dismiss than a mere "preliminary peek"

17    would permit), the court concludes that *Iqbal* considerations aside, Plaintiffs' Complaint does not

18    contain the requisite factual allegations to support a viable EMTALA cause of action.  As discussed

19    above, EMTALA is the "Patient Anti-Dumping Act," which prohibits hospitals from refusing to

20    appropriately treat indigent or low income patients by transferring the indigent patient to other

21    hospitals.  *See Jackson*, 246 F.3d at 1255.  Despite Plaintiffs' arguments to the contrary (*see*, *e.g.*,

22    Plaintiffs' Opposition to Motion to Dismiss (Doc. # 15 at 6)), EMTALA does not impose a national

23    standard of care on hospitals when screening patients.  *Jackson*, 246 F.3d at 1255.  Instead, the

24    "touchstone is whether, as §1395dd dictates, the procedure is designed to identify an 'emergency

25    medical condition' that is manifested by 'acute' and 'severe' symptoms." *Id.*

26    The gravamen of Plaintiffs' Complaint is that Banner Hospital violated  EMTALA by

27    (1) failing to screen and/or (2) failing to stabilize Mr. Money.  (Doc. # 1 at 5-6.)  As discussed below,

28    the court concludes Plaintiffs' EMTALA causes of action fail as a matter of law because the facts

1  alleged by Plaintiffs' Complaint do not give rise to an actionable EMTALA claim, particularly under

2  *Iqbal's* plausibility requirements.

3           ***I. Plaintiffs' "Failure to Screen" EMTALA Claim (Doc. #1, First Cause of Action)***

4           After careful consideration of the parties' memoranda submitted to the court regarding the

5  Motion to Dismiss (Doc. # 10), the court is convinced Plaintiffs' Complaint does not give rise to a

6  viable EMTALA cause of action *for failure to screen*.  As recognized by *Jackson*, faulty or incorrect

7  screening (similar to what Plaintiffs have averred herein) does not violate EMTALA.  What gives rise

8  to a viable EMTALA claim is where the patient is not screened, or if screened, that the screening

9  differed markedly from that provided other patients.  *Id.* 246 F.3d at 1254-55 (citing *Correa v. Hosp.*

10  *San Francisco*, 69 F.3d 1184, 1192-93 (1st Cir.1995); *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 879

11  (4th Cir.1992)).  Agreeing with the 8th Circuit's decision in *Summers v Baptist Med. Ctr. Arkadelphia*,

12  91 F.3d 1132, 1139, and *Holcomb v Monahan*, 30 F.3d 116, 1127 (11th Cir. 1994), the Ninth Circuit

13  stated that

14                    [W]e hold that instances of 'dumping' or improper screening of patients

15                    for a discriminatory reason, or the failure to screen at all, or screening

16                    a patient differently from other patients perceived to have the same

17                    condition, all are actionable under EMTALA.   But instances of

18                    negligence in the screening or diagnostic process, or of mere fault

19                    screening, are not. * * * As long a hospital applies the same screening

20                    procedures to indigent patients which it applies to paying patients, the

21                    hospital does not violate this section of the Act.

22  *Jackson, supra,* at 1255-56.

23           Here, based on Plaintiffs' pleadings, the inescapable conclusion is Mr. Money was, in fact,

24  screened consistent with EMTALA requirements. (*See* Doc. # 1 at 3:11-12, 3:21-22, 5:21-22.)

25  Dr. Gandy, Dr.Thai, and a nurse all examined Mr. Money.  (*Id*.)  There is nothing properly asserted

26  by Plaintiffs for the court to conclude he was not screened or that when screened, his screening differed

27  from "paying patients."   Therefore, Plaintiffs' allegation that Banner Hospital violated EMTALA's

28  screening obligation because Mr. Money's screening was "cursory" is inapposite.  Faulty, incorrect,

1    or "cursory" screening does not violate EMTALA. *Jackson*, 246 F.3d at 1254-55.

2         Furthermore, the court notes that the affidavit of the Plaintiffs' expert witness, Dr. Mark Boren,

3    which accompanied Plaintiffs' Complaint, states that Mr. Money was *admitted* to Banner Hospital.

4    (Doc. # 1-1, Ex. A at 5:17.)  This fact of the patient's admission is also corroborated by Mr. Money's

5    medical record (*see* Doc. # 10 at Ex. 1, pp. 7-8) and Plaintiffs' Opposition to the Motion to Dismiss

6    (Doc. # 15 at 9:17-18).   Although Mr. Money's admission into Banner Hospital was not pled in

7    Plaintiffs' complaint, the "preliminary peek" this court has undertaken included consideration of the

8    facts asserted in the affidavit of Plaintiffs' expert witness which was filed concomitantly with

9    Plaintiffs' complaint.  *TradeBay*, 2011 WL 6182039 at *5 (citing *Twin City Fire Ins.*, 124 F.R.D. at

10   653; *Turner Broadcasting Systems, Inc.*, 175 F.R.D. at 556).   As noted above, Plaintiffs' expert,

11   Dr. Boren, stated Mr. Money was admitted to the hospital.

12        The fact that Mr. Money was admitted is critical because, by statute, Banner Hospital's

13   obligations under EMTALA end when an individual like Mr. Money is screened and thereafter

14   admitted for inpatient care.  *See* 42 C.F.R. §489.24(d)(2)(1) (stating that a "hospital has satisfied its

15   responsibilities" if the hospital has screened an individual and admits that individual as an inpatient

16   in good faith in order to stabilize the emergency medical condition); *see also Bryant*, 289 F.3d at

17   1168-69.  Bryant held that EMTALA liability ends "[a]fter an individual is admitted for impatient

18   care."  As a result, the reference in Plaintiffs' expert's affidavit that Plaintiff was admitted to Banner

19   Hospital would in and of itself prevent Plaintiffs from relying on EMTALA as a predicate for federal

20   jurisdiction.[9]

21        Although this reference to Mr. Money's admission to Banner Hospital was not included within

22   the allegations of Plaintiffs' Complaint, the affidavit accompanying the Complaint may have "pled

23   Plaintiffs out of court." *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001)

24   ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim, even

25   though he was not required to allege those facts.") (citation omitted); *see also Curry v. Advocate*

26   _____

27        [9] Plaintiffs' complaint does not allege the screening was not done in "good faith."  Although Plaintiffs'
     argument with respect to a "failure to stabilize" was that the admission to Banner Hospital was a "sham" (*see*
28   *infra* at §III B ii), the complaint contains no such averments.

                                                    13

1    *Bethany Hosp.*, 204 Fed. Appx. 553, 556 (7th Cir. 2006) (holding, in the EMTALA context, that

2    plaintiff "pled himself out of court by pleading" that he was screened by a hospital but, nonetheless,

3    died of cardiac arrest).  A claim under EMTALA's failure to screen rules is defeated if the patient is

4    admitted to the hospital, as Mr. Money was herein.

5         Finally, Plaintiffs' allegations of a violation of EMTALA are implausible under the more

6    stringent pleading standard enunciated in *Iqbal*.  As discussed above, Rule 8 requires "more than an

7    unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 662 (citation

8    omitted).  The substance of Plaintiffs' Complaint alleges that "Defendants failed to provide a screening

9    that complied with established protocols" and that "[t]he examination provided to [Mr. Money] was

10   not comparable to the one offered to other patients presenting similar symptoms."  (Doc. # 1

11   at 5:19-25.)  Such conclusory allegations are insufficient to survive *Iqbal's* plausibility requirements.

12   As noted above, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing

13   more than conclusions."  *Marin*, 2012 WL 424564 at *2 (citations omitted).[10]

14        ***ii.     Plaintiffs' "Failure to Stabilize" EMTALA Claim (Doc. #1, Second Cause of Action***

15        With respect to Plaintiffs' "failure to stabilize" argument, the court concludes Plaintiffs'

16   complaint does not state a claim on which relief can be granted for several reasons.  First, EMTALA's

17   stabilization requirements do not apply to the facts of Mr. Money's case.  Under EMTALA, a

18   hospital's duty to "stabilize" a patient only arises in connection with the *transfer* of that patient to a

19   different hospital.  42 U.S.C. § 1395dd(c)(1)("If an individual at a hospital has an emergency medical

20   condition which has not been stabilized [. . .] the hospital may not transfer the individual. . . ").

21        That a hospital's duty to stabilize only arises in the context of a *transfer* is confirmed by the

22   statute's definition of the term "stabilize."  "The term 'to stabilize' means . . . to provide such medical

23   treatment of the condition as may be necessary to assure . . . that no material deterioration of the

24   condition is likely to result from or occur *during the transfer of the individual from a facility*."

25   *See* 42 U.S.C. §1395dd(e)(3)(A) (emphasis added).  As a result, the term "stabilize" in the context of

26

27        [10] The court would note, however, that even if the patient had not been admitted to Banner Hospital, the
     facts as alleged by Plaintiffs and as set forth in their expert's affidavit demonstrate the patient was screened.  The

28   court would also reach the same conclusion even if one were to conclude the averments of the Complaint
     complied with *Iqbal*.

                                          14

an EMTALA claim does not apply to individuals unless they are being transferred. *Bryant* 289 F.3d at 1168.

Plaintiffs do not allege Mr. Money was transferred; from the Plaintiffs' Complaint and Affidavit of Dr. Borden, it appears Mr. Money was *not* transferred. Thus, Plaintiffs' failure to stabilize claims must necessarily fail. As the Ninth Circuit held in *Bryant*, 289 at 1168, EMTALA expressly defines the term "stabilize" "only in connection with the *transfer* of an emergency room patient." (Emphasis added.)

As with EMTALA's "failure to screen" claims, Plaintiffs' "failure to stabilize" claim also fails herein because a hospital's liability under EMTALA terminates when a patient is *admitted* for inpatient care. *Bryant*, 289 F.3d at 1168 ("We hold that EMTALA's stabilization requirement ends when an individual is admitted for inpatient care"). As noted above, Mr. Money was admitted to Banner Hospital. Consequently, Banner Hospital cannot be liable under EMTALA as a matter of law. Once again, it appears that Plaintiffs have pled themselves out of court by proffering evidence that demonstrates that Banner Hospital fulfilled its EMTALA obligations. *See Curry*, 204 Fed. Appx. at 556 (holding that plaintiff "pled himself out of court by pleading" that he was screened by a hospital but, nonetheless, died of cardiac arrest).

Additionally, Plaintiffs' failure to stabilize averments run afoul of the *Iqbal* pleading standards. Plaintiffs allege that Banner Hospital violated EMTALA's stabilization requirement because Banner Hospital "failed to provide treatment within its capabilities to stabilize [Mr. Money's] emergency medical condition." (Doc. # 1 at 6:18-19.) This assertion is demonstrative of the conclusory statements *Iqbal* forbids.[11] As noted above, the term "stabilize" only has meaning "in connection with the *transfer* of an emergency room patient" and does not apply to individuals, like Mr. Money, who

---

[11] Plaintiffs' "failure to stabilize" cause of action consists of the following averments:

**VIOLATION OF 42 U.S.C. § 1395dd FAILURE TO STABILIZE**
**(Against Defendant Banner)**

53. Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as if they were fully set forth herein.

54. Kenneth had an emergency medical condition.

55. Banner had knowledge of Kenneth's emergency medical condition.

56. Banner failed to provide treatment within its capabilities to stabilize Kenneth's emergency medical condition.

1    were not transferred.  *See* 42 U.S.C. § 1395dd(e)(3)(A).  As a result, EMTALA's stabilization
2    requirement does not apply to the facts Plaintiffs allege because Mr. Money was not transferred.[12]

3          However, even if Mr. Money had been transferred and not admitted, the averments of the
4    complaint demonstrate that Banner Hospital and Dr. Thai made repeated attempts to "stabilize"
5    Mr. Money.  Plaintiffs' expert affidavit confirms this conclusion, noting that Drs. Gandy and Thai
6    performed EKGs, blood tests, a chest x-ray, a CT scan, and "repeated" cardiac lab reports.[13]  Thus,
7    even if Mr. Money had been transferred, Plaintiffs' allegations suggest Banner Hospital complied with
8    EMTALA, not that Banner Hospital violated EMTALA.  There is also no basis to conclude Mr. Money
9    was the victim of any discriminatory medical treatment.

10         Plaintiffs attempt to evade this conclusion by arguing in their Opposition to the Motion to
11   Dismiss that Mr. Money's admission into Banner Hospital was a "sham" which Banner Hospital
12   allegedly adopted to circumvent EMTALA liability.  (Doc. # 15 at 9:5.)  In that regard, the Ninth
13   Circuit has held that a hospital cannot escape EMTALA liability "by ostensibly 'admitting' a patient,
14   with no intention of treating the patient, and then discharging or transferring the patient without having
15   met the stabilization requirement."  *Bryant*, 289 F.3d at 1169.  Known as a "sham" admission, such
16   admissions form a narrow exception to the general rule that EMTALA liability ends when the patient
17   is admitted to Banner Hospital.  *Id.*

18         However, neither the averments of Plaintiffs' Complaint nor Plaintiffs' Opposition
19   Memorandum contain any facts supporting their assertion that Mr. Money's admission was a "sham."
20   (*See generally* Doc. ## 1, 15.)  On the contrary, an impartial reading of the Complaint infers that
21   Defendants  repeatedly attempted to treat and stabilize Mr. Money before he died.  (*See* Doc. # 1 at
22   4-5.)  These facts undermine Plaintiffs' recently-asserted argument that Banner Hospital had no

23

24         [12] To be clear, however, as with the court's conclusions regarding the application of *Iqbal* to Plaintiffs'
     failure to screen claim, even if Plaintiffs' failure to stabilize allegations satisfied *Iqbal's* more stringent pleading
25   requirements, the court would still find that Plaintiff's failure to stabilize claims fail under the EMTALA
     analysis.
26

27         [13] The affidavit of Dr. Borden, although submitted to establish Plaintiffs' claims of medical malpractice
     under Chapter 41A of the Nevada Revised Statutes, demonstrates further compliance with EMTALA.  (*See* Doc.
28   # 1-1.)  Despite the fact that the affidavit is critical of the procedures and care Dr. Gandy and Dr. Thai provided,
     it nevertheless demonstrates Banner Hospital's compliance with EMTALA's stabilization requirements.

1    intention of treating Mr. Money.  (Doc. # 15 at 9.)

2          Plaintiffs also attempt to surmount this impasse by arguing that, given Mr. Money's condition,

3    Banner Hospital "could have never provided the necessary care . . . and, thus, their admission was a

4    sham." (*Id*. at 9:22-23.)  This argument fails for several reasons.  Dr. Borden's affidavit is devoid of

5    the conclusion that the emergency care Banner Hospital provided was a pretense or a "sham."  Further,

6    it is undisputed that Mr. Money was never transferred or discharged.  (*See* Doc. # 1 at 5 stating that

7    Mr. Money died in Banner Hospital.)  Consequently, the "sham" admission exception is inapplicable

8    on the facts of Mr. Money's case.

9                                    **IV.  CONCLUSION**

10          In sum, the court concludes that Plaintiffs' Complaint does not contain the requisite factual

11   allegations to sustain a finding that this court has jurisdiction over Plaintiffs' federal (EMTALA)

12   claims.

13          First, with regard to Plaintiffs' "failure to screen" claim, the law clearly states that even faulty

14   and incorrect screenings do not violate EMTALA.  *Jackson*, 246 F.3d at 1255.  Here, Plaintiffs

15   basically concede that Mr. Money was screened, albeit in an allegedly "cursory" fashion. (*See* Doc. # 1

16   at 3:11-12, 3:21-22, 5:21-22.)  More importantly, the fact that Mr. Money was admitted to Banner

17   Hospital strikes a fatal blow to Plaintiffs' EMTALA screening claims.

18          Second, the law is equally clear that a violation of EMTALA's stabilization requirements can

19   only occur within the context of a transfer.  *See* 42 U.S.C. § 1395dd(e)(3)(A).  Here, Plaintiffs'

20   complaint does not allege that Mr. Money was transferred. (*See* Doc. # 1 at 4:25-26.)  But, irrespective

21   of whether the decedent was transferred, the inescapable conclusion drawn from the allegations of the

22   complaint coupled with the opinions of Dr. Boren's affidavit, demonstrates that Banner Hospital

23   undertook attempts to stabilize the patient, efforts which fall within EMTALA's parameters.

24          As a result, this court's "preliminary peek" has "convinced" the court that Plaintiffs' EMTALA

25   claims will fail.  Accordingly, the court will not have jurisdiction over the claims Plaintiffs assert

26   against Banner Hospital and therefore, the court must refrain from proceeding with Plaintiffs' state law

27   claims against Drs. Thai and Gandy.

28          As to the issue of a stay, the court notes that staying discovery in this case is appropriate

                                            17

because, as recognized by Judge Leen in *TradeBay*, "[c]ommon situations in which a court may determine that staying discovery pending a ruling on a dispositive motion occur when dispositive motions raise issues of *jurisdiction*, venue, or immunity." *TradeBay*, No. 11-702 2011 WL 6182039 at *3 (D. Nev. Dec. 13, 2011) (citing *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (*per curiam*) (emphasis added). The very jurisdictional situation described by Judge Leen exists here. Staying discovery is proper because the court can decide the underlying motion to dismiss without further discovery. *See Mlejnecky*, No. 10-2630 2011 WL 489743 at *6 (stating that staying discovery is appropriate if the court can decide the pending motion without further discovery). Other than a cursory reference to discovery, Plaintiffs have not argued further discovery is needed to establish that subject matter jurisdiction exists in this case. (*See* Pl.'s Opp. (#20) at 4-5.)

Because the court's "preliminary peek" at Defendants' Motion to Dismiss (Doc. #10) has "convinced" the court that Plaintiffs' EMTALA claims do not pass jurisdictional muster, the predicate for pursuing Plaintiffs' claims in federal court fail herein. Anticipating that Defendants' motions to dismiss will eventually granted, the court concludes that discovery should be stayed herein pending final resolution of the motions to dismiss.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Stay Discovery (Doc. # 18) pending disposition of Defendants' motions to dismiss is **GRANTED**.

**IT IS SO ORDERED**.

DATED: April 9, 2012

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE