1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                         DISTRICT OF NEVADA
7                              * * *
8   SHERRY MONEY, an individual and as          )
    administrator for the ESTATE OF KENNETH     )
9   MONEY; and KENNY MONEY, an                   )          3:11-CV-00800-LRH-WGC
    individual,                                  )
10                                               )
                   Plaintiffs,                   )          ORDER
11                                               )
    v.                                           )
12                                               )
    BANNER HEALTH d/b/a BANNER                   )
13  CHURCHILL COMMUNITY HOSPITAL; et             )
    al.,                                         )
14                                               )
                   Defendants.                   )
15  _____ )

16          Before the court is defendant Banner Churchill Community Hospital's ("Banner") Motion

17  to Dismiss (#10[1]).  Plaintiffs Sherry and Kenny Money ("Plaintiffs") filed an opposition (#15), to

18  which Banner replied (#17).

19  **I.      Facts and Procedural History**

20          This is a medical malpractice and wrongful death action arising out of Kenneth Money's

21  ("Money") visit to Banner.  On the morning of November 4, 2010, Money drove himself to Banner

22  and requested medical attention for chest pain.  Medical personnel at Banner admitted Money to

23  inpatient care, and after further testing and treatment determined that Money should be transferred

24  to Saint Mary's Hospital to obtain more suitable treatment.  On November 5, 2010, Money went

25  _____

26          [1] Refers to the court's docket entry number.

1   into cardiac arrest and passed away before he could be transferred.

2         Plaintiffs brought this action alleging claims for negligence/medical malpractice, violation

3   of 42 U.S.C. § 1395dd of the Emergency Medical Treatment and Active Labor Act ("EMTALA"),

4   and wrongful death (#1).  Defendant Banner now moves to dismiss the EMTALA claim for failure

5   to state a claim (#10).

6   **II.    Legal Standard**

7         To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil

8   Procedure 12(b)(6), a complaint must satisfy the notice pleading standard of Rule 8(a)(2).  *See*

9   *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008).  A complaint must

10  contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.

11  R. Civ. P. 8(a)(2).  The Rule 8(a)(2) pleading standard does not require detailed factual allegations;

12  however, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the

13  elements of a cause of action" will not suffice.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)

14  (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

15        Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter,

16  accepted as true, to state a claim to relief that is plausible on its face."  *Id.* at 1949 (internal

17  quotation marks omitted).  A claim has facial plausibility when the pleaded factual content allows

18  the court to draw the reasonable inference, based on the court's judicial experience and common

19  sense, that the defendant is liable for the misconduct alleged.  *See id.* at 1949-50.  "The plausibility

20  standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a

21  defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a

22  defendant's liability, it stops short of the line between possibility and plausibility of entitlement to

23  relief."  *Id.* at 1949 (internal quotation marks and citation omitted).

24        In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as

25  true.  *Id.* (citation omitted).  However, "bare assertions . . . amount[ing] to nothing more than a

26                      2

1   formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth."

2   *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1951)

3   (alteration in original) (internal quotation marks omitted).  The court discounts these allegations

4   because they do "nothing more than state a legal conclusion – even if that conclusion is cast in the

5   form of a factual allegation." *Id.* (citing *Iqbal*, 129 S. Ct. at 1951.)  "In sum, for a complaint to

6   survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from

7   that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (quoting

8   *Iqbal*, 129 S. Ct. at 1949).

9   **III.    Discussion**

10           **A.  EMTALA**

11           Congress enacted EMTALA, known as the "Patient Anti-Dumping Act," in response to

12   inadequate care that indigent and uninsured patients were receiving in hospital emergency rooms.

13   *Jackson v. E. Bay Hosp.*, 246 F.3d 1248, 1254 (9ᵗʰ Cir. 2001).  In enacting EMTALA, Congress

14   was concerned with emergency rooms refusing to treat patients, or transferring patients to other

15   hospitals without first stabilizing their conditions.  *Id.*  However, EMTALA was not enacted to

16   create a federal malpractice cause of action nor to establish a national standard of care.  *Bryant v.*

17   *Adventist Health Sys./W.*, 289 F.3d 1162, 1166 (9th Cir. 2002).

18           Specifically, EMTALA provides a hospital must provide for an appropriate medical

19   screening examination within the capability of the hospital's emergency department when an

20   individual comes to that emergency department and requests examination or treatment.  42 U.S.C.

21   § 1395dd(a).  A hospital meets the "appropriate medical screening" requirement of EMTALA if it

22   provides a patient with an examination comparable to one offered to another patient presenting

23   similar symptoms.  *Jackson*, 246 F.3d at 1256. The examination must be designed to identify acute

24   and severe symptoms that alert the physician of the need for immediate medical attention.

25   *Eberhardt*, 62 F.3d at 1257.  Importantly, a hospital is *not* liable under EMTALA if it negligently

26                                                        3

fails to detect or if it misdiagnoses an emergency medical condition. *Bryant*, 289 F.3d at 1166. (emphasis added). As such, individuals who receive substandard medical care must pursue their remedies under state law and not under EMTALA. *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1257 (9th Cir. 1995).

If the hospital determines that an individual has an emergency medical condition, the hospital must provide for further examination and treatment as may be required to stabilize the medical condition, or transfer the individual to another medical facility where the individual's medical risks are minimized. 42 U.S.C. § 1395dd(b)(1). Because state tort law provides a remedy for negligent care, EMTALA ceases to apply once a hospital admits an individual for inpatient care. *Bryant*, 289 F.3d at 1168. However, a hospital cannot escape liability under EMTALA by admitting a patient with no intention of treating the patient, and then discharging or transferring the patient without first stabilizing the patient. *Id.* at 1169.

The court has reviewed the documents and pleadings on file in this matter and finds that Plaintiffs' allegations fail to establish that Money was screened in an inappropriate manner, or that Banner failed to meet EMTALA's stabilization requirements. It is undisputed that Money was ultimately admitted into Banner and treated at the hospital thereby cutting off Banner's liability under EMTALA. Further, the complaint's allegations fail to allege that Banner only admitted Money to avoid liability under EMTALA, as the facts alleged show that Money was examined and treated throughout his time at Banner, eventually leading to Banner's decision to transfer Money to another hospital. Finally, because EMTALA does not require a correct diagnosis, it is irrelevant that Banner may have misdiagnosed Money's condition. Therefore, the court shall grant Banner's motion to dismiss Plaintiffs' EMTALA claim.

**B. Remaining State Law Claims**

District courts are granted supplemental jurisdiction over all other claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case

4

or controversy." 28 U.S.C. § 1367(a).  However, exercising supplemental jurisdiction is within the discretion of the court.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  For instance, a district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).

At this time, the court declines to exercise supplemental jurisdiction over Plaintiffs' related state law claims for medical negligence/malpractice as the court has dismissed Plaintiffs' sole federal claim.  Therefore, the court shall dismiss Plaintiffs' related state law claims without prejudice.


IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss (#10) is GRANTED. Plaintiffs' complaint (# 1) is DISMISSED in its entirety in accordance with this order.

IT IS SO ORDERED.

DATED this 13th day of July, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

5